

AO 106 (REV #16) Affidavit for Search Warrant

AUSA Kurt Siegal, (312) 886-1265

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

Case No. 23 M 417

The Instagram account violet_blitz00 ("**Subject Account 1**"), further described in Attachment A

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Ward Yoder, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of California, there is now concealed:

**See Attachment A, Part III**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2113(a) | bank robbery |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

s/ Ward Yoder (with permission BWJ)
_____
*Applicant's Signature*

WARD YODER, Special Agent
Federal Bureau of Investigation
_____
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: April 24, 2023

_____
*Judge's signature*

City and State: Chicago, Illinois

BETH W. JANTZ, U.S. Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT     )

                                         )

NORTHERN DISTRICT OF ILLINOIS     )

## **AFFIDAVIT**

I, Ward Yoder, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately June 2009.

2.     As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent crimes, including, among others, kidnaping, bank robbery, and the apprehension of violent fugitives. I have participated in the execution of multiple federal search warrants.

3.     This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Instagram, a social network provider located at 1601 Willow Road, Menlo Park CA 94025. The account to be searched is violet_blitz00 ("**Subject Account 1**"), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Instagram, there exists evidence of violations of Title 18, United States Code, Section 2113(a) (the "**Subject Offenses**").

4.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence of violations of the **Subject Offenses** are located in **Subject Account 1**.

## I.     BACKGROUND INFORMATION

### A.     Instagram

5.     Based on my training and experience and information available from Instagram's website (instagram.com), I have learned the following about Instagram:

a.     Instagram, which is owned by Facebook, operates a free social networking application and website, accessed through web-enabled electronic devices and at Instagram.com, which is centered around photography and videography. Instagram users establish accounts and create a profile, which they can use to post and share photographs, videos, and other information from web-enabled electronic devices, such as certain cellular phones, tablets, and computers.

b.     Instagram users can create a title and a caption for photographs and videos that they post, and can "follow," meaning observe electronically, other Instagram users and their postings, including photographs and videos.  Instagram users can also comment on photographs and videos they and others post.  Instagram

2

users can also create a "geotag" in connection with certain actions they perform, such as posting a photograph or video or commenting on a photograph or video. This "geotag" indicates where the user is geographically when he/she is conducting the action. For example, a user can indicate that he/she is in Chicago when he/she posts a particular photograph or video.

c.      In order to find other Instagram users to "follow," a particular user may allow Instagram to access that user's contact lists on the user's cellular phone/electronic device and the user's contact lists on third-party social media and web sites. According to Instagram's website, Instagram may retain this information.

d.      An Instagram user can adjust the privacy settings for his/her account.  If an Instagram user allows his/her account to be public, anybody who has the web address for that user's Instagram account, or who has an Instagram account of their own, can observe the activity in that user's account. If an Instagram user designates his/her account as "private," he/she must approve all other users before they are allowed to "follow," meaning observe electronically, the private account.

e.      The Instagram application for mobile devices also includes a camera application, which can assist an Instagram user in taking pictures with their electronic devices.  Instagram users can use their accounts in connection with other social networking websites, such as Facebook, Twitter, and Flickr. For example, Instagram users can post photographs and videos from their Instagram Account on Facebook.

3

f.      Social networking providers like Instagram typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Instagram users may communicate directly with Instagram about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Instagram typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

g.      Therefore, the computers of Instagram are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Instagram, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Instagram to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

4

## II. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

### A. Summary

6.     On April 6, 2023, an offender appearing to be a white male conducted a note-style robbery of a bank in Chicago.  Five days later, the user behind **Subject Account 1** messaged Individual A that the user had recently committed a bank robbery.  The user behind **Subject Account 1** also sent Individual A a photograph of a demand note.

7.     On April 13, 2023, an offender who appeared to be the same as the bank robber from April 6, 2023, robbed a second bank in Chicago.  In the second robbery, a teller placed a Global Positioning System (GPS) tracking device in with the stolen money.  Based in part on the GPS tracking device's location and the general description of the offender, law enforcement arrested DYLAN PEDERSEN approximately 15 minutes after the robbery, approximately 3 blocks from the bank. During a search of PEDERSEN's bag, law enforcement recovered a demand note that appears to be the same as that the user of **Subject Account 1** sent to Individual A on or about April 11, 2023.

### B. DYLAN PEDERSEN's Identifiers

8.     According to an April 13, 2023, arrest report from the Chicago Police Department, DYLAN PEDERSON is a 22-year-old white male who is approximately

5 feet, 7 inches tall and weighs approximately 127 pounds.[1]  According to her arrest report, PEDERSEN has a light complexion and long, brown, straight hair.

### C.    The Bank Robbery at Chase Bank on April 6, 2023

***The Robbery***

9.    According to Chase Bank surveillance photographs and bank employees, at approximately 1:31 p.m. on April 6, 2023, an offender conducted a note-style bank robbery at the Chase Bank branch located on the 5100 block of N. Clark Street in Chicago.

10.    According to Victim Teller A, a Chase Bank employee working behind the counter on April 6, 2023, the offender approached Victim Teller A's counter that afternoon wearing black sunglasses and a red flannel shirt over a black shirt.  Victim Teller A described the offender as being a white male who was approximately 5 feet, 6 inches, to 5 feet, 7 inches tall, with a slim build, no facial hair, and either short brown hair or with long hair tucked underneath his beanie.  Victim Teller A estimated

---

[1] On April 14, 2023, the government filed a Complaint against DYLAN PEDERSEN, alleging that PEDERSEN had committed a bank robbery on April 13, 2023.  *See* 23 CR 214, Dkt. 1.  Relying on an April 13, 2023, arrest report from the Chicago Police Department, the government identified PEDERSEN by male pronouns in the Complaint.  At PEDERSEN's initial appearance on April 14, 2023, PEDERSEN represented to the Court that: (1) PEDERSEN identifies by the female pronouns she/her; and (2) PEDERSEN identifies by the name "Livia."  To prevent confusion, and out of respect for the defendant, the government here refers to PEDERSEN, a.k.a. Livia, by female pronouns.

that the offender was in his early to mid-20s. A photograph of the offender provided by Chase Bank is below.



11.     According to Victim Teller A, the offender approached Victim Teller A's window and slid a white envelope to Victim Teller A. On the back of the envelope, according to Victim Teller A, was writing that stated words to the effect of, "This is a robbery put in 20s and 50s and don't do anything stupid."

12.     According to Victim Teller A, the offender kept his hands in his pockets and instructed Victim Teller A to not hit an alarm. Fearing that the offender might be armed,[2] Victim Teller A pulled cash from his/her drawer, placed it into the envelope, and slid the envelope back to the offender. The offender then left the bank on the west side.

---

[2] Victim Teller A reported that he/she never saw the offender with a weapon.

13. According to a Chase Bank audit, the bank lost approximately $410 because of this robbery. Chase Bank is insured by the Federal Deposit Insurance Corporation (FDIC).

14. After the Chase Bank robbery on April 6, 2023, Chicago Police notified officers in the 20th District (the district in which the robbery occurred) of the event by showing the below "Officer Awareness" bulletin.



**D. The Statements of Subject Account 1 on April 11, 2023**

15. At approximately 11:57 p.m. on April 11, 2023, Individual A called the FBI National Threat Operations Center to report that the user of **Subject Account 1**, who Individual A believed to be PEDERSEN, contacted Individual A on Instagram and admitted to having robbed a bank. According to Individual A, the user of **Subject**

**Account 1** began messaging Individual A in March 2023, and had previously mentioned that the user lived in Chicago. Individual A also stated that the user of **Subject Account 1** had previously sent photographs of herself to Individual A.

16.    According to Individual A, at approximately 8:35 p.m. on April 11, 2023, the user of **Subject Account 1** sent Individual A messages stating that she had robbed a bank. Individual A claimed that he/she then looked up "Chicago Bank robberies" and found a picture of PEDERSEN. After reporting this information, Individual A inquired about whether he/she would receive a reward for reporting PEDERSEN.

17.    Law enforcement conducted a follow-up interview with Individual A on April 12, 2023. After that interview, Individual A provided law enforcement with the below screenshots from Individual A's communications with **Subject Account 1** on April 11, 2023. Individual A's communications are depicted on the right side of each image; the username for **Subject Account 1** is circled at the top of each image.[3]

---

[3] For privacy purposes, PEDERSEN's passport number in the upper right-hand corner, and date of birth in the center-left of her passport photograph have been redacted.







11

18.     At an initial appearance on April 14, 2023, DYLAN PEDERSEN notified the Court that her preferred name is "Livia"—not DYLAN PEDERSEN.

### E.     The Bank Robbery at Byline Bank on April 13, 2023

***The Robbery***

19.     According to Byline Bank surveillance photographs and bank employees, at approximately 4:58 p.m. on April 13, 2023, an offender conducted a note-style bank robbery at the Byline Bank branch located on the 5300 block of N. Broadway in Chicago, Illinois.

20.     According to a Byline Bank surveillance photograph, an offender wearing a black beanie, black shirt or jacket, grey pants, and dark sunglasses entered the Byline Bank at approximately 4:57 p.m.  A photograph of the offender entering the bank is below.



21.     According to Victim Teller B, a Byline Bank employee who was working behind the counter, Victim Teller B observed the offender enter the bank shortly before the branch closed.  Victim Teller B reported that the offender approached the teller window.  A photograph of the offender at the teller window is provided below.



22.     According to Victim Teller B, the offender slid a handwritten note to Victim Teller B.  According to Victim Teller B, the note was written on an envelope and stated words to the effect, "This is a robbery, put the bills in the envelope.  Don't try anything.  Put the large bills in the envelope."

23.     Victim Teller B reported that he/she did not have cash at his/her window, so he/she then went to a different teller window.  There, according to Victim Teller B, he/she retrieved $50 bills, $20 bills, and a Global Positioning System (GPS) tracking device that was concealed within the cash.  Victim Teller B reported that he/she then gave the cash and GPS tracking device to the offender.

13

24.     According to Victim Teller B, the offender left the bank after receiving the cash and GPS tracking device.  Victim Teller B later reported that, after leaving the bank, the offender went east, toward N. Broadway.  Victim Teller B then activated the bank's alarm.

25.     According to a Byline Bank audit, the bank lost approximately $1,600 as a result of this robbery.  At the time of this robbery, Byline Bank was insured by the Federal Deposit Insurance Corporation (FDIC).

### *The Police Response*

26.     According to body worn camera from a responding Chicago Police Department officer, law enforcement responded to the bank and arrived at approximately 5:10 p.m.

27.     Body worn camera footage from a responding Chicago police officer shows that, after police arrived at approximately 5:10 p.m., Witness B—the Byline Bank branch manager—provided law enforcement with a description of the offender. According to Witness B, he/she thought the offender was female because the offender's hair was tucked into a beanie.  Witness B also described the offender as wearing a black beanie, black button-down shirt, gray pants, and black sunglasses.

28.     Witness B also reported that, after leaving the bank, the offender traveled north on N. Broadway.  For reference, a relevant map is provided below.



29.     As Witness B described the offender to responding officers on body worn camera, law enforcement was monitoring the location of the GPS tracking device taken by the offender.  At 5:11 p.m., approximately 12 minutes after the robbery, law enforcement noted the GPS tracking device was moving northbound toward W. Berwyn Avenue, at or near the alley between N. Wayne Avenue and N. Lakewood Avenue.

30.     According to the body camera footage, at approximately 5:11 p.m., the responding officer who interviewed Witness B notified other responding officers that, based on Witness B's description of the offender, the officer believed the offender matched that of the April 6, 2023, robbery of Chase Bank.  Two minutes later, another member of law enforcement added that, based on the possibility that this was the

same offender, law enforcement should look for a young, skinny, white male who was dressed as a female.

31. According to the body camera footage, at approximately 5:12 p.m., law enforcement monitoring the GPS tracking device observed that the device was located moving westbound on W. Berwyn Avenue, next to the alley between N. Lakewood Avenue and N. Wayne Avenue.

32. According to body worn camera footage from responding police officers, law enforcement stopped a suspected offender—later identified as DYLAN PEDERSEN—at approximately 5:13 p.m. at or near 1315 W. Berwyn Avenue—the approximate location of the GPS tracking device. According to the body worn camera footage, and as demonstrated in the photograph below, PEDERSEN was the only person located at or near the GPS tracking device at that time. By the time law enforcement located PEDERSEN, PEDERSEN had changed clothing from the bank robbery.

16



33.     Body worn camera footage shows that officers detained PEDERSEN at approximately 5:13 p.m.  According to the footage, law enforcement monitoring the GPS tracking device then stated over the radio that the device was on W. Berwyn Avenue at the corner of the alley between N. Glenwood Avenue and N. Wayne Avenue—the approximate location of the above screenshot showing police detaining PEDERSEN.

34.     According to the body worn camera footage, while law enforcement was calling out the GPS tracking device as being at the PEDERSEN's location, Chicago police searched PEDERSEN's black bag.  During that search, they found cash from the bank robbery, a black shirt, grey pants, aviator-style sunglasses, and a black beanie that were all consistent with those worn by the offender.  Law enforcement also recovered a note from PEDERSEN's black bag.  A photograph of the recovered

note is below. Law enforcement later determined that this note matched that the user of **Subject Account 1** sent Individual A via Instagram on April 11, 2023.



35.     According to the body worn camera footage, at approximately 5:18 p.m. (about 20 minutes after the bank robbery and about 5 minutes after law enforcement detained the suspect), Chicago police brought Witness B to the scene of PEDERSEN's detention to conduct a show-up identification. There, law enforcement brought PEDERSEN before Witness B and showed Witness B the recovered black shirt and grey pants. According to the Chicago police, Witness B identified PEDERSEN as the offender, and the black shirt and grey pants as those PEDERSEN wore during the robbery.

36.     Based on my training and experience in other investigations, I believe that a search of social network provider account contents often of individuals engaged in criminal conduct yields investigative leads relating to:

a.     the identities of participants engaged in and witnesses to bank robbery offenses;

b.     the contact information of participants engaged in and witnesses to bank robbery offenses;

c.     the methods and techniques used in bank robbery offenses;

d.     information regarding the physical location of participants engaged in and witnesses to bank robbery offenses.

## III.    SEARCH PROCEDURE

37.    In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Instagram to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a.     The search warrant will be presented to Instagram personnel who will be directed to the information described in Section II of Attachment A;

b.     In order to minimize any disruption of computer service to innocent third parties, Instagram employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

19

38.     Instagram employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

39.     Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Instagram employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.    CONCLUSION

40.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 2113(a) are located within one or more computers and/or servers found at Instagram, headquartered at 1601 Willow Road, Menlo Park CA 94025. By this affidavit and application, I request that the Court issue a search warrant directed to Instagram allowing agents to seize the electronic evidence and other information stored on the Instagram servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.


s/ Ward Yoder (with permission BWJ)

Ward Yoder
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone 24st day of April, 2023

Honorable BETH W. JANTZ
United States Magistrate Judge

21

## ATTACHMENT A

### I. SEARCH PROCEDURE

1.    The search warrant will be presented to Instagram personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Instagram employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant.

4.    Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

### II. FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF INSTAGRAM

To the extent that the information described below in Section III is within the possession, custody, or control of Instagram, headquartered at 1601 Willow Road, Menlo Park CA 94025, Instagram is required to disclose the following information to the government for the following user ID:

**violet_blitz00**

      a.      All identity and contact information, including full name, user ID, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

      b.      The dates and times at which the Instagram Accounts and associated profiles were created, and the Internet Protocol ("IP") addresses at the time of sign-up;

      c.      All log file information, including web requests, IP addresses, browser type, referring/exit pages and URLs, number of clicks and interactions with links, domain names, landing pages, pages viewed, and other such information from February 1, 2023, to present;

      d.      All IP logs from February 1, 2023, to present;

      e.      All location and geotag data from February 1, 2023, to present;

      f.      All data and information regarding devices used to access the Instagram Accounts from February 1, 2023, to present;

      g.      All messages sent or received by the users of the Instagram Account;

      h.      All data and information associated with the user's profile page for the Instagram Account;

      i.      All photographs and videos posted or uploaded by the users of the Instagram Account, including all the titles, captions, and commentary for those

2

photographs and videos, and IP logs for the users relating to this activity, including the dates and times that the photographs and videos were uploaded from February 1, 2023, to present;

j.      All photographs and videos commented upon by the users of the Instagram Accounts, including all the titles, captions, and commentary for those photographs and videos, and all IP logs for the users relating to this activity, including the dates and times that the comments were made from February 1, 2023, to present;

k.      All photographs, videos, and media that have been linked to or marked as favorites by the users of the Instagram Account(s) from February 1, 2023, to present;

l.      Any other data posted by, uploaded by, commented upon, or viewed by the users of the Instagram Account(s), to the extent available from February 1, 2023, to present;

m.      A list of all of the other Instagram Account(s) that the users of the Instagram Account(s) followed, and a list of all other Instagram users who followed the Instagram Account(s) from February 1, 2023, to present;

n.      All privacy and account settings for the Instagram Account(s) from February 1, 2023, to present;

o. All information about the users of the Instagram Account(s)' access and use of Instagram in connection with other social networking application such as Facebook and Twitter;

p. All records pertaining to communications between Instagram and any person regarding the user(s) of the Instagram Account(s), including contacts with support services and records of actions taken; and

q. All records pertaining to the users' contact lists on his/her electronic devices and his/her contact lists on third-party social media and web sites, to the extent that those records have been retained by Instagram.

Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III. Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence concerning violations of Title 18, United States Code, Section 2113(a), as follows:

1. Items related to the identity of the user or users of **Subject Account 1**.

2. Items related to the physical location of the users of **Subject Account 1** at or near the times of the **Subject Offenses**.

3. Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

4

4.      Photographs, images, videos, or communications regarding banks, the banking system, or bank robberies.

5.      All of the non-content records described above in Section II.

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a. examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

6

     e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

     Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.